DAVID S. RATNER (SBN 316267)
SHELLEY A. MOLINEAUX (SBN 277884)
RATNER MOLINEAUX, LLP
1990 N. California Blvd., Suite 20
Walnut Creek, CA 94596
Tel: (925) 239-0899
Fax: (925) 801-3818
david@ratnermolineaux.com
shelley@ratnermolineaux.com

Attorneys for Plaintiff
FRANCINE AUSTIN

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCINE AUSTIN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH, a Public entity; and DOES 1 through 50, inclusive.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  Racial Discrimination in Violation of Title VII of the Civil Rights Act 1964 (CRA) [42 U.S.C. § 2000e-2]<br>2.  Disability Discrimination in Violation of Title II of the Americans with Disabilities Act 1990 (ADA) [42 U.S.C. § 12101, et seq.]<br>3.  Failure to Provide a Reasonable Accommodation under the ADA [42 U.S.C. § 12111(8)-(9)]<br>4.  Failure to Engage in Good Faith Interactive Process in Violation of the Code of Federal Regulations (CFR) [29 CFR § 1630.2(o)(3)]<br>5.  Harassment Under the ADA [42 U.S.C. § 12203]<br>6.  Retaliation Under the ADA [42 U.S.C. § 12203]<br>7.  Failure to Prevent Discrimination, Retaliation and Harassment Under the ADA [42 U.S.C. § 12101]<br>8.  Violation of Business and Professions Code § 17200<br>9.  Intentional Infliction of Emotional Distress<br><br>**DEMAND FOR JURY TRIAL** |

1.      Plaintiff FRANCINE AUSTIN ("Plaintiff" or "Ms. Austin"), an individual, an individual, seeks equitable relief, declaratory relief and monetary damages against Defendants SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH ("SFDPH") and DOES 1 through 50 for their willful violations of American Disabilities Act and related laws.

### NATURE OF THE LAWSUIT

2.      This case arises out of SFDPH depriving its employee, Ms. Austin of her rights under the Americans with Disabilities Act ("ADA") and under the Civil Rights Act ("CRA"). Throughout her 23 years of employment with SFDPH, Defendants have discriminated against Ms. Austin on the basis of her race. Additionally, despite Ms. Austin's traumatic brain injury that substantially limits life activities, SFDPH has failed to provide her with reasonable disability accommodations and, on numerous occasions, failed to engage in a good faith interactive process to determine reasonable accommodations for Plaintiff's disability. Moreover, SFDPH has compounded the problem by harassing and retaliating against Ms. Austin on the basis of her race and disability. Consequently, along with her ongoing physical disability, Ms. Austin now suffers from severe emotional and mental distress due to the unlawful employment practices of SFDPH.

### PARTIES

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12101, et seq., for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to  28 U.S.C. § 1367 for Plaintiff's claims arising under the laws of the State of California and/or common law.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant, City of San Francisco conducts its business in this district, and the acts and omissions giving rise to this Complaint occurred within this district.

5.     Defendant SFDPH is, and at all times herein mentioned, was a governmental entity organized under the laws of the State of California.

6.     Plaintiff is Francine Austin is an adult resident of Alameda County, California.

7.     Plaintiff is an Asian-American; her mother is Okinawan. She looks entirely, and unmistakably Asian.

8.     Plaintiff sustained a traumatic brain injury as a result of an incident in which a heavy metal stall door crashed into Ms. Austin's forehead while she was using the restroom at her workplace on May 3, 2018. Ms. Austin's traumatic brain injury substantially limits some of her major life activities.

9.     Plaintiff is an individual with a disability as defined in California Government Code Section 12926 in the Americans with Disabilities Act (hereinafter "ADA") (42 U.S.C. § 12101, et seq.)

10.     Plaintiff is informed and believes that Defendant Does 1-50 are associations, corporations, business entities, or are ("the employees") individuals residing in the State of California, within this judicial district. The true names or capacities, whether individual, corporate, associate or otherwise of Defendants, DOES 1 through 50, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants are in some manner legally responsible for the events and happenings herein referred to, and legally caused injury and damages thereby to the Plaintiff as herein alleged.

11.     Plaintiff is informed and believes, and on such information and belief alleges, that at all times mentioned herein, Defendants, and each of them, were the agents, servants, contractors and employees of each of the remaining Defendants, and were acting within the course and scope of said agency, service contract and employment. All actions alleged herein were done with the knowledge, consent, approval and ratification of each of the defendants herein.

12.     Defendant San Francisco Department of Public Health and Does 1 to 50, inclusive, are collectively referred to hereafter as "Defendants".

*ADMINISTRATIVE EXHAUSTION REQUIREMENTS*

13.     Pursuant to Subtitle A of the ADA, Plaintiff is not required to "exhaust administrative remedies" before bringing this lawsuit. (28 C.F.R. Part 35, § 35.172)

14.     On or about August 22, 2018, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) and received a Right to Sue on August 11, 2020, attached hereto as Exhibit 1.

15.     On or about April 18, 2019, Plaintiff filed a complaint with the California Department of Fair Employment and Housing (DFEH).  Plaintiff obtained a Right to Sue Letter from the California Department of Fair Employment and Housing on April 18, 2019.

*GENERAL ALLEGATIONS*

16.     In or around 1997, Defendant SFDPH hired Plaintiff as a Program Manager. Plaintiff is a 54-year-old Asian American female. Plaintiff is disabled.

17.     At all times relevant, the Plaintiff was and is currently still employed by SFDPH as a Health Program Coordinator III.

18.     Ms. Austin has endured a long-standing discriminatory and hostile work environment based on her race which continues to this day.

19.     Throughout Plaintiff's employment with SFDPH, her supervisor, Michelle Long, an African American female, has consistently assigned Plaintiff a much larger, more complex, and disproportionate workload then her non-Asian coworkers.

20.     Ms. Long has also consistently undermined Ms. Austin's work in subtle and not-so-subtle ways. Ms. Long has refused to support Ms. Austin's work and has withheld assistance and authority which Ms. Austin has required in order to manage contracts with third-party health providers. Ms. Long has subjected Plaintiff to unwarranted criticisms of her work, and nitpicked her work, subjecting her to far more scrutiny than Ms. Austin's non-Asian and or African American peers.

21.     Ms. Long's history of favoring African American employees over Ms. Austin spans many years. She has made her animus toward Plaintiff no secret over the years.

22.      In or about 2008 and 2009, Ms. Long assigned Marsha Herring, an African American Program Manager, a much lighter workload then Ms. Austin. At the time, Ms. Austin took a monthlong leave due to stress from her job and this desperate treatment. Ms. Austin complained about Ms. Long and Marguerite Heyward, and Administrative Assistant, was asked to do an analysis of Ms. Herring's and Ms. Austin's caseloads. Ms. Heyward reported that Ms. Austin's workload was significantly heavier and more complex, and that "Michelle did everything she could to try to make the caseloads appear similar."

23.      Ms. Long has made a point of telling Plaintiff that, "I avoid working with you," and that she did not want to be in a group with Ms. Austin.

24.      Ms. Long has repeated the race-based favoritism she showed to Ms. Herring with Valerie Wiggins, an African American female Health Program Coordinator I. Ms. Wiggins typically has a fraction of the caseload of other Program Managers in the department. Ms. Austin has compared Ms. Wiggins' work volume with Stephanie Yang, an Asian/Vietnamese female who was also a Health Program Coordinator I, and found that during the same time period, Ms. Yang had been assigned three times the number of contract appendices with a significantly greater percentage of multi-year funding as Ms. Wiggins. Likewise, Richelle Mojica, a Filipina American female Health Program Coordinator III, has a caseload that is equivalent to Ms. Wiggins, despite the fact that Ms. Mojica was only hired in February 2019.

25.      Historically, Ms. Austin by far has been assigned the heaviest workload, and most importantly, the most complex caseload in that her caseload consists of 40% to 44% of multi-year, multi-fund sources, and multi-program contracts. These contracts are the most time consuming to administer due to formatting requirements and the review of years of budget data. In comparison, April Crawford, an African American female Health Program Coordinator III has a caseload that consists of only about 20% to 25% of multi-year contracts and is the only other Program Manager who approaches the complexity of Plaintiff's workload.

26.      In or around August 2016, Ms. Wiggins was refusing to perform support duties for Ms. Austin that were part of her job and accused Ms. Austin of being "passive aggressive" several times. When Ms. Austin corrected her and suggested *she* was acting in a passive aggressive manner, Ms. Wiggins growled, "I'm aggressive!" in a threatening manner. Ms. Long received an aggressive email

from Ms. Wiggins intended for Plaintiff and summoned Plaintiff into her office. Ms. Long told Plaintiff not to document interactions between colleagues because it is "seen as a threat." Ms. Austin reported this to HR Representative Willie Ramirez and Christina Fong, Labor Relations Manager/Director. Mr. Ramirez told Ms. Austin it was not appropriate for her "to diagnose a coworker" and discouraged her from documenting hostile interactions between coworkers because "it can escalate the situation." Ms. Fong told her employees do not have the right to document such interactions. HR did nothing about Ms. Wiggins' conduct or Ms. Long's admonishment to not document hostile behavior.

27.     On August 18, 2016, Eric Whitney, a white male Manager with anger management issues, yelled at Plaintiff in a CDTA staff meeting. Ms. Austin commented that outburst was an example of white male privilege. Later, Jim Stroh, another white male, interrupted Plaintiff's conversation with another CDTA Program Manager and angrily told her, "If you talk about race in a staff meeting again, I'll file a grievance."

28.     That same evening, Plaintiff emailed Ms. Long documenting these events and requested a facilitated conversation with herself, Mr. Stroh and Mr. Whitney, and reporting their conduct as hostility based on race and gender. Ms. Long ignored Plaintiff's request. Plaintiff repeated her request for either a facilitated discussion or guidance as to whether she should report this to HR or EEO. Again, Ms. Long ignored her requests. Plaintiff reported this hostile yelling and potential workplace violence issue to HR on August 22nd, 2016. HR acknowledged Ms. Austin took the right steps in light of this threat, and they spoke to Ms. Long, but failed to take any other action. A week later, on August 26, 2016, Ms. Long issued a retaliatory "verbal counseling" in response to Ms. Austin reporting Mr. Whitney's hostile conduct and potential workplace violence.

29.     On August 30, 2016, Plaintiff met with Matthew Valdez, EEO Program Manager, for an EEO Discrimination Intake and reported this hostile discriminatory work environment, and Ms. Long's retaliatory and inadequate response. SFDPH management took no action to investigate or address these concerns. In response to these complaints, Ms. Long retaliated by continuing to create a hostile work environment, making snide comments to Ms. Austin while undermining and failing to support her work.

30.     On July 27, 2017, nearly a year after HR failed to address her prior complaints of gender hostility and potential workplace violence, Plaintiff again reported several new incidents of her white

male coworker yelling and creating an extremely hostile work environment, not just for herself, but for several female coworkers who were all fearful that they would be the victims of workplace violence. She reported Ms. Long had tolerated these types of attacks occurring in her presence many times in the past and failed to take any corrective actions. Plaintiff also reported that Ms. Long retaliated against her for reporting a similar violent outburst in August 2016 , and that while presenting this retaliatory write up, Ms. Long said "that she could do nothing about Mr. Whitney's behavior 'unless he punched' me in the face because his bad conduct occurred sporadically. Also, she told me that I was to stop documenting coworkers' behavior that I perceived as violent/threatening to me because it escalated the situation." Although HR acknowledged the complaint, no apparent action was taken to address this.

31.     On February 1, 2018, Ms. Long berated Plaintiff after a staff meeting. It began when Ms. Long refused to answer a coworker's question during a staff meeting and instead ranted, "I don't give a care," and, "I'm done." When Ms. Austin answered the coworker's question, Ms. Long retaliated by giving Ms. Austin a verbal warning. Ms. Austin asked Mr. Ramirez on February 12, 2018 to facilitate a discussion with Ms. Long because the hostile work environment was so stressful, and she had received a retaliatory verbal warning. Mr. Ramirez declined to intervene and instead blithely told plaintiff that, "Michelle Long has been with the DPH for a long time" and to ask Michelle Ruggels, Ms. Long's supervisor, if she would be willing to facilitate the discussion.

32.     On May 8, 2018, Ms. Long assigned yet another agency to Plaintiff's caseload despite the fact that she already had the highest caseload, and that Ms. Wiggins had less than half of Ms. Austin's workload. Ms. Austin protested this unfair assignment to miss long, as well as Human Resources Manager Louise Brooks-Houston on May 9, 2018.

33.     On May 3, 2018, Plaintiff sustained a traumatic brain injury (TBI) as a result of a heavy metal stall door crashing down on her in the workplace. As a result, Plaintiff suffered a TBI and cervical injuries, and continues to suffer from significant post-concussion symptoms from her TBI. She continues to experience pain from her unresolved cervical injuries.

34.     Plaintiff's TBI substantially limits some of her major life activities.

35.     On May 17, 2018, Plaintiff's doctor ordered she be allowed to return to work with a reduced five hours per day, 25 hours per week work schedule as a reasonable accommodation. On May 31, 2018, Plaintiff's doctor reduced this to 20 hours per week.

36.     On June 6, 2018, Ms. Long refused to grant Plaintiff's request for accommodation based on her doctor's note, and Ms. Long forced Ms. Austin out on an unpaid medical leave, in violation of CCR § 7893.9(c). CCR § 7893.9(c) states, in pertinent part that, "When an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence." This forced medical leave was an act of discrimination and retaliation which came hot on the heels of Plaintiff's complaints to HR and Ms. Long about her unfair workload.

37.     On July 9, 2018, Plaintiff's workers compensation doctor ordered her back to work again, this time for 25 hours per week, reflecting her gradual recovery and increased capacity to work. Plaintiff presented the doctor's note to SFDPH accommodations/medical office per its protocols and returned to work with this modified schedule for three days on July 9, 10 and 11.

38.     However, on July 13, 2018, after she had worked three days at her desk, an Administrative Assistant notified Plaintiff that her return to work was not authorized, again putting her on an illegal forced medical leave, which would have lasted through September 11, 2018. Incredibly, Ms. Long vindictively refused to pay Plaintiff for the three days she worked, despite the fact that Ms. Long called Plaintiff at her desk during these three days and instructed her about her work priorities. When Ms. Austin requested her pay for these three days, Ms. Long ordered the department's timekeeping clerk not to correct this error.

39.     Plaintiff protested this forced medical leave to Ms. Ruggels on August 7, 2018. It was not until Plaintiff made a formal complaint of discrimination to SFDPH's EEO office, that SFDPH even considered honoring her doctor's request for a modified schedule as an accommodation for her traumatic brain injury.

40.     In September 2018, upon Plaintiff's return to work with the 25 hour per week restriction, Ms. Long still required Ms. Austin to carry an equivalent 40-hour-plus per week workload, but now with fewer hours per week to accomplish it. Ms. Long essentially negated this accommodation by not commensurately reducing the workload or its complexity to match Plaintiff's reduced work schedule.

Worse, this really was a form of retaliation by forcing Plaintiff to do the same amount of work in less time, greatly increasing plaintiffs stress level an exacerbating her still-recovering TBI.

41.     Plaintiff reported Ms. Long's hostility toward her and her concerns for workplace equity; how Ms. Long told her, "You don't have much work to do," and, "I don't have to support you." Finally, seven weeks after Plaintiff's return to work, Ms. Brooks-Houston granted a meeting to discuss Plaintiff's concerns. To demonstrate the discriminatory workload, Plaintiff detailed how much more challenging and difficult her contract administration was due to the complexity of her contracts, including the fact that she had an inordinate number of multi-year multi-funding source contracts which are inherently more complex and time consuming to administer. HR, however, refused to let her discuss other staff persons workloads in comparison.

42.     Plaintiff also presented an objective analysis of the distribution of multiyear contract assignments among staff, which disproved elements of Ms. Long's false claims about her alleged metrics for contract assignments. Plaintiff also provided an analysis of the percentage of multi-year appendices in each Program Manager's caseload to show the disparate assignment of workload, which Ms. Long and Ms. Brooks-Houston summarily ignored.

43.     Ms. Brooks-Houston dismissed Plaintiff's concerns, saying, "It's okay to give someone more complex work if they can handle it, right?" demonstrating a further failure to engage in an interactive process an unwillingness to prevent discrimination. It is also alarming that a Human Resources representative who is supposed to objectively intervene to eliminate discrimination would so blithely dismiss these concerns and endorse a position that it is not discriminatory to overburden an employee of one race versus another merely because the overburdened employee is more competent. Such a dismissive attitude served to ratify Ms. Long's discriminatory conduct. There was no follow-up or further investigation after this meeting by Ms. Brooks-Houston. HR did nothing to intervene or adjust this discriminatory allocation of work.

44.     In direct response to Plaintiff's raising these concerns to HR, in mid-November 2018, Ms. Long punitively assigned three more agencies to Plaintiff's already overburdened caseload just as she was about to take a pre-approved absence. Again, Plaintiff was only scheduled to work 30 hours per week at this time, so this piling on work was even more punitive, and contrary to her doctor's requested

accommodations for a reduced work schedule. Plaintiff again protested this discriminatory allocation of work to Ms. Long and EEO via email. The EEO representative sanctioned Ms. Long piling on the additional workload with no further inquiry.

45.     Then, on December 16, 2018, Ms. Long unfairly attacked Plaintiff for not having documented the completion of a contract that was the responsibility of another employee who had recently quit.

46.     On January 9, 2019, Hallie Albert, EEO Director, finally met with Ms. Austin to discuss her complaints from the previous five months. Ms. Albert apologized "on behalf of the SFDPH for the discrimination on the medical non-accommodation," and admitted she "knew something was wrong" when Ms. Austin filed the complaint of discrimination and recounted the history of toxic environment during the EEO Intake session on August 22, 2018. Ms. Albert asked if Ms. Austin was interested in a settlement offer and also offered to "facilitate" a "work relation conversation" between Ms. Austin and Ms. Long since it "appears these issues have been going on for years."

47.     On March 13, 2019, Hallie Albert met with Ms. Austin and Ms. Long for what was supposed to be the promised "EEO Facilitated Conversation," ostensibly for Ms. Albert to facilitate communication of Plaintiff's concerns to Ms. Long so that Ms. Long could take constructive steps to amend her conduct and ensure similar issues did not arise in the future.

48.     Plaintiff again reiterated Ms. Long was creating a "hostile retaliatory environment," was discriminating in the workload distribution based on skin color, and other discriminatory conduct. Plaintiff requested a change in environmental tone. Ms. Albert attempted to get Ms. Long to agree to make reasonable accommodations, but Ms. Long refused every single request for consideration. Instead, the conversation devolved to Ms. Long threatening Plaintiff's job, saying, "If Francine doesn't feel welcome or that she belongs, why doesn't she look for another position?" Ms. Long further berated Plaintiff to "stop using 'hostile and retaliatory'" when describing the workplace. EEO director, Hallie Albert, did nothing to correct this abuse, there boy thereby ratifying it. Ms. Albert gave no direction to Ms. Long about moving forward to ensure she was not discriminating in the future, and utterly failed to advocate for Ms. Austin. This encounter sent a clear message of institutional indifference to both Ms. Long's hostile conduct and Ms. Austin's plight.

49. After Ms. Long left the room, Ms. Albert echoed Ms. Long and pointedly asked, "If you're so unhappy, why would you stay?" wo which Plaintiff responses, "I'm not unhappy…" "It's the stress of dealing with Michelle and disrespect from Valerie Wiggins."

50. Ms. Albert then gave Ms. Austin a settlement offer containing a bad-faith release of all claims in exchange for a $2,867.40 gift card ("considered back wages, less applicable taxes, deductions and withholdings"). At the meeting, Ms. Albert demanded Ms. Austin respond within one week's time, despite the fact that this time limit to respond was a clear violation of the Age Discrimination in Employment Act ("ADEA").

51. This release is also void under the ADEA because the waiver of Plaintiff's claims must be for additional consideration in addition to any pack pay owed her. 29 U.S.C. § 626(f)(1)(D).

52. This one-week deadline created extreme duress for Ms. Austin. The paltry sum offered in the form of a gift card for $2,867.40 literally added insult to injury. This short time for her to respond, along with the paltry and illegal consideration for the sweeping release of claims underscores the bad faith of SFDPH's efforts to get Ms. Austin to waive her rights to future redress, rather than correcting the longstanding illegal conduct of Ms. Long.

53. Defendants and Ms. Long continue to discrimination and retaliate against Ms. Austin and ignore her requests for accommodation by, inter alia, continuing to assign her unreasonable workloads and continuing to create a hostile work environment.

### FIRST CAUSE OF ACTION

*Racial Discrimination in Violation of Civil Rights Act (CRA)*

*42 U.S.C. § 2000e-2*

*(Against All Defendants)*

54. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

55. 42 United States Code section 2000e-2 provides in relevant part:

> It shall be an unlawful employment practice for an employer (a) to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .

56.     Plaintiff is Asian American.

57.     Plaintiff was subjected to unwelcome racial discrimination and harassment.

58.     Defendants and/or Defendants' managers and supervisors maintained a culture where Asian Americans were subjected to racial harassment and discrimination and well as a hostile work environment.

59.     Plaintiff was subjected to discriminatory remarks and actions from Ms. Long and Ms. Brooks-Houston.

60.     Plaintiff witnessed discriminatory remarks and actions from Ms. Long to the other Asian American employees who worked in the same position as Plaintiff.

61.     Plaintiff made numerous complaints to Defendants' Human Resources Department regarding Ms. Long's treatment of Ms. Austin, but Defendants failed to take any corrective action in response to Plaintiff's complaints.

62.     Plaintiff was also subjected to unwelcome racial discrimination and harassment from Mr. Whitney.  Mr. Whitney would curse at, yell at, and accuse Ms. Austin of racial discrimination of himself. Mr. Whitney belittled Ms. Austin in front of the other employees and made Ms. Austin feel unwelcome and unwanted at work.

63.     Ms. Austin suffered emotionally and psychologically from the discrimination and abuse visited upon them by Ms. Long.

64.     The foregoing acts of harassment were pervasive and destructive of Plaintiff's working environment.

65.     Despite being aware of the hostile environment and discriminatory treatment of Plaintiff, Defendants failed to take any steps to prevent or correct the misconduct.

66.     Plaintiff believes and alleges that Plaintiff's race was a substantial and determining factor in Defendants' decision not to accommodate Plaintiff's reasonable accommodation request.

67.     Defendants' discrimination of Plaintiff as alleged in this complaint constitutes an unlawful employment practice in violation of 42 U.C.S. § 2000e-2.

68.     As a direct, foreseeable, and proximate result of Defendants' discriminatory acts, Plaintiff has suffered substantial losses in earnings and job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount to be proven at trial.

69.     The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights.  Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other.

## SECOND CAUSE OF ACTION

*Disability Discrimination in Violation of Americans with Disabilities Act (ADA)*

*42 U.S.C. § 12101, et seq.*

*(Against All Defendants)*

70.     Plaintiff re-alleges and incorporates by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

71.     In 1990 the United States Congress found that laws were needed to more fully protect some 43 million Americans with one or more physical or mental disabilities, that "historically, society has tended to isolate and segregate individuals with disabilities," that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;" that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals;" and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101.

72.     Congress stated as its purpose in passing the Americans with Disabilities Act, 42 U.S.C. §

12101(b):

> "It is the purpose of this chapter:
> 1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
> 2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
> 3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and
> 4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

73.     The Americans with Disabilities Act, codified at 42 U.S.C. § 12101 et seq., makes it

unlawful for an employer to discriminate against an employee on the basis of the employee's disability in

regard to the "terms, conditions, and privileges of employment." *See* 42 U.S.C. § 12112(a); 29 C.F.R. §§

1630.4, 1630.13.

74.     Since 2018, Plaintiff has suffered from a traumatic brain injury and cervical injury from a

heavy metal stall door crashing into her in the workplace. A person with a TBI becomes more fatigued,

which exacerbates cognitive difficulties such as memory issues and cognitive impairments, which shows

up as increased difficulty with concentration and multitasking. Plaintiff continues to suffer from this

condition. A person with a TBI requires more rest in order to heal, and a reduced schedule, until the brain

gradually heals and is capable of working longer hours. However, with an appropriately limited schedule

and commensurately reduced workload, a person with a TBI can still perform the essential functions of

their job.

75.     At all relevant times, Plaintiff's condition substantially limited her ability to work, and

thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision

(1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been suffering from a

traumatic brain injury. By virtue of her physical disability, Plaintiff belongs to a class protected by the ADA.

76.     Plaintiff is disabled under the ADA act because she is mentally impaired due to a traumatic brain injury and needed accommodations to perform the essential functions of her job.

77.     Defendant engaged in the unlawful employment practices, in violation of the ADA, by denying Plaintiff reasonable accommodation on the basis of her disability.

78.     Plaintiff is informed and believes and based thereon alleges that her disability, the substantial impairment of her traumatic brain injury, was the motivating factor in Plaintiff's decision to deny reasonable accommodation to Plaintiff and other discrimination against her, in violation of Title 42 of the United States Code, Section 12112(a).

79.     Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

80.     Following Plaintiff's discrimination, harassment, and retaliation, and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

81.     In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to compensatory damages in an amount according to proof at the time of trial. *See* 42 U.S.C. § 1981a(b)(1).

82.     Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial

### THIRD CAUSE OF ACTION

*Failure to Provide a Reasonable Accommodation Under the ADA*

*42 U.S.C. § 12111(8)-(9)*

*(Against Defendant City of San Jose and DOES 1 to 50)*

83.     Plaintiff re-alleges and incorporates by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

84.     Since 2018, Plaintiff has suffered from a traumatic brain injury and cervical injury from a heavy metal stall door crashing into her in the workplace. A person with a TBI becomes more fatigued, which exacerbates cognitive difficulties such as memory issues and cognitive impairments, which shows up as increased difficulty with concentration and multitasking. Plaintiff continues to suffer from this condition. A person with a TBI requires more rest in order to heal, and a reduced schedule, until the brain gradually heals and is capable of working longer hours. However, with an appropriately limited schedule and commensurately reduced workload, a person with a TBI can still perform the essential functions of their job.

85.     At all relevant times, Plaintiff's condition substantially limited her ability to work, and thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision (1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been suffering from a traumatic brain injury. By virtue of her physical disability, Plaintiff belongs to a class protected by the ADA.

86.     The ADA, codified at 42 U.S.C. § 12101 et seq., makes it unlawful if an employer does not make "reasonable accommodations" available to the employee who has a known disability and who can perform the position's essential functions. *See* 42 U.S.C. §§ 12111(8), (9), 12112(a); 29 C.F.R. §§ 1630.2(o), 1630.9 & Pt. 1630, App. §§ 1630.2(o), 1630.9.

87.     Additionally, 29 Code of Federal Regulations 1603.2(o) provides in relevant part:

(1) The term reasonable accommodation means: . . . (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the

essential functions of that position . . . (2) Reasonable accommodation may include but is not limited to: . . . (ii) job restructuring; part time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

88.     Defendant failed to make a reasonable accommodation available for Plaintiff's disability, notwithstanding Plaintiff's proven ability to perform the essential functions required of a Health Program Coordinator III.

89.     Between June and August 22, 2018, when Plaintiff did her EEO Intake, SFDPH refused to communicate with miss Austin about accommodating her modified schedule request.

90.     As further evidence of Ms. Long's and SFDPH's bad faith, during this time period of forced medical leave, Ms. Long's unit had two vacant Program Manager staff positions and was significantly understaffed. This was not a situation where an employee cannot find suitable alternative work or "make work" for a temporarily disabled employee. Ms. Long's department had an abundance of work that was being neglected.

91.     Plaintiff's worker's compensation doctor first requested an ergonomic evaluation and equipment modification in May 2018. Although nominally approved shortly thereafter, it was not completed for eight months. An ergonomic consultation was scheduled for June 12, 2018. This evaluation was then cancelled due to the forced medical leave. After Plaintiff returned on August 27, 2018, the ergonomic evaluation was scheduled for September 11, 2018. SFDPH then dropped the ball and did not promptly follow up with the approval of requested equipment and did not install the first ergonomic equipment for another two months, in mid-December. SFDPH did not complete the installation of all the equipment until January 2019, seven months after Ms. Austin's first request for accommodation.

92.     The combination of failure to provide ergonomic equipment and failure to accommodate Plaintiff's need for reduced work schedule with a commensurately reduced workload exacerbated her physical condition, TBI symptoms and further caused a bilateral carpal tunnel injury. This failure to timely provide simple adaptive equipment for Ms. Austin's work area is emblematic of Defendant SFDPH's disdain for its obligation to reasonably accommodate employees with disabilities.

93.     Following Plaintiff's discrimination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

94.     Following Plaintiff's discrimination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

95.     In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to compensatory damages in an amount according to proof at the time of trial. See 42 U.S.C. § 1981a(b)(1).

96.     Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial.

### FOURTH CAUSE OF ACTION

*Failure to Engage in Good Faith Interactive Process Under Code of Federal Regulations (CFR)*

*29 CFR § 1630.2(o)(3)*

*(Against All Defendants)*

97.     Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

98.     29 Code of Federal Regulations Section 1630.2(o)(3) provides in relevant part:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

99.     Defendants were Plaintiff's employer, and Plaintiff was Defendants' employee.

100.    Defendants knew that Plaintiff had a disability that limited major life activity.

101.    Plaintiff was able to perform the essential job duties of Plaintiff's position with reasonable accommodation for Plaintiff's disability.

102.    Plaintiff requested that Defendants make reasonable accommodation(s) for Plaintiff's disability so that she would be able to perform the essential job requirements.

103.    Defendants refused to provide a reasonable accommodation to Plaintiff without engaging in a good faith interactive process.  Instead, Defendants forced Plaintiff to take medical leave instead of making reasonable accommodations due to Plaintiff's disability.

104.    Plaintiff suffered harm when Defendants failed to engage in a good faith interactive process with Plaintiff and during her forced medical leave, Ms. Austin lost income, benefits, pension and accrued time off.

105.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

106.    Under Government Code section 12940, Plaintiff is entitled to recover economic and noneconomic damages caused by Defendants' discriminatory practices based on Plaintiff's disability and violation of the Fair Employment and Housing Act. Plaintiff is also entitled to reasonable attorney's fees and costs pursuant to Government Code section 12965.

107.    The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and

ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

**FIFTH CAUSE OF ACTION**

*Harassment Under the ADA*

*[42 U.S.C. § 12101]*

*(Against Defendant City of San Jose and DOES 1 to 50)*

108.    Plaintiff re-alleges and incorporates by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

109.    Since 2018, Plaintiff has suffered from a traumatic brain injury and cervical injury from a heavy metal stall door crashing into her in the workplace. A person with a TBI becomes more fatigued, which exacerbates cognitive difficulties such as memory issues and cognitive impairments, which shows up as increased difficulty with concentration and multitasking. Plaintiff continues to suffer from this condition. A person with a TBI requires more rest in order to heal, and a reduced schedule, until the brain gradually heals and is capable of working longer hours. However, with an appropriately limited schedule and commensurately reduced workload, a person with a TBI can still perform the essential functions of their job.

110.    At all relevant times, Plaintiff's condition substantially limited her ability to work, and thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision (1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been suffering from a traumatic brain injury. By virtue of her physical disability, Plaintiff belongs to a class protected by the ADA.

111.    At all relevant times, and notwithstanding her protected status, Plaintiff was subjected to unwelcome harassment by SFDPH and several of the Defendant's employees based on her physical disability and her race. The harassing conduct was severe and pervasive, and affected the terms,

conditions, or privileges of Plaintiff's employment. Among other things, plaintiff's repeated requests for reasonable accommodations were unreasonable denied without Defendants providing alternative reasonable accommodations; Plaintiff was deprived of a timely, good-faith, interactive process on several occasions.

112.    As a result of the foregoing harassing conduct, Plaintiff considered her work environment to be hostile or abusive, and a reasonable, physically disabled person in Plaintiff's circumstances would have considered the work environment to be hostile or abusive as well.

113.    The harassing conduct was perpetrated by several employees of SFDPH, including employees holding management positions, including, without limitation, Supervisor Michelle Long, Supervisor Michelle Ruggels and Human Resources Manager, Louise Brooks-Houston. Defendant SFDPH knew or should have known of the harassment. Despite this, SFDPH failed to take immediate or appropriate corrective action.

114.    As a direct result of Defendant's harassment against Plaintiff based on her race and her disability, Plaintiff has suffered, and continues to suffer, increased emotional and mental distress, which partially manifests itself in physical discomfort, anxiety, extreme depression, loss of sleep, trouble eating, difficulty with concentration, debilitating headaches, crying episodes, emotional problems and physical pain.  She has also suffered, and continues to suffer, from the following harms: the substantial loss of potential earnings; the damages to her reputation and career; the past and continuing loss of wages and employment benefits.

115.    Following Plaintiff's discrimination and harassment and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

116.     Following Plaintiff's discrimination and harassment and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

117.     In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to compensatory damages in an amount according to proof at the time of trial. See 42 U.S.C. § 1981a(b)(1).

118.     Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial.

### SIXTH CAUSE OF ACTION

*Retaliation Under the ADA*

*42 U.S.C.§ 12203*

*(Against Defendant City of San Jose and DOES 1 to 50)*

119.     Plaintiff re-alleges and incorporate by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

120.     42 United States Code Section 12203 provides, in relevant part:

> (a) No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

121.     Since 2018, Plaintiff has suffered from a traumatic brain injury and cervical injury from a heavy metal stall door crashing into her in the workplace. A person with a TBI becomes more fatigued, which exacerbates cognitive difficulties such as memory issues and cognitive impairments, which shows up as increased difficulty with concentration and multitasking. Plaintiff continues to suffer from this condition. A person with a TBI requires more rest in order to heal, and a reduced schedule, until the brain

gradually heals and is capable of working longer hours. However, with an appropriately limited schedule and commensurately reduced workload, a person with a TBI can still perform the essential functions of their job.

122.   At all relevant times, Plaintiff's condition substantially limited her ability to work, and thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision (1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been suffering from a traumatic brain injury. By virtue of her physical disability, Plaintiff belongs to a class protected by the ADA.

123.   The ADA, codified at 42 U.S.C. § 12101 et seq., makes it unlawful for an employer to take an adverse action against an employee who has engaged in any practice that the ADA protects. *See* 42 U.S.C. § 12203; 29 C.F.R. §§ 1630.8, 1630.12 & Pt. 1630, App. § 1630.8.

124.   Plaintiff requested reasonable accommodations to deal with her traumatic brain injury that substantially limits major life activities, an ADA protected activity, and these accommodations were ignored or denied by Defendant.

125.   Plaintiff was harassed and discriminated against by Defendant and/or Defendant's managers and supervisors. Plaintiff considered the work environment to be hostile and abusive toward persons with disabilities.

126.   Plaintiff's supervisor engaged in the conduct.

127.   Plaintiff complained about the hostile and abusive conduct.

128.   Defendants retaliated against Plaintiff by refusing to provide reasonable accommodations, rather than investigating or addressing Plaintiff's complaints regarding Defendant's failure to provide reasonable accommodations.

129.    Defendants retaliated against Plaintiff by overburdening her workload both before and after she sustained her TBI and requested accommodation, rather than investigating or addressing Plaintiff's complaints regarding the discriminating and harassing work environment.

130.    Following Plaintiff's discrimination, harassment and retaliation, and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

131.    Following Plaintiff's discrimination, harassment and retaliation, and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

132.    In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to compensatory damages in an amount according to proof at the time of trial. See 42 U.S.C. § 1981a(b)(1).

133.    Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial.

### SEVENTH CAUSE OF ACTION

*Failure to Prevent Discrimination, Retaliation and Harassment Under the ADA*

*[42 U.S.C. § 12101]*

*(Against Defendant City of San Jose and DOES 1 to 50)*

134.    Plaintiff re-alleges and incorporate by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

135.    Since 2018, Plaintiff has suffered from a traumatic brain injury and cervical injury from a heavy metal stall door crashing into her in the workplace. A person with a TBI becomes more fatigued, which exacerbates cognitive difficulties such as memory issues and cognitive impairments, which shows

up as increased difficulty with concentration and multitasking. Plaintiff continues to suffer from this condition. A person with a TBI requires more rest in order to heal, and a reduced schedule, until the brain gradually heals and is capable of working longer hours. However, with an appropriately limited schedule and commensurately reduced workload, a person with a TBI can still perform the essential functions of their job.

136.    At all relevant times, Plaintiff's condition substantially limited her ability to work, and thus constitutes a "physical disability" as defined in United States Code section 12102, subdivision (1)(A) and subdivision (2). At all relevant times, Defendant knew that Plaintiff had been suffering from a traumatic brain injury. By virtue of her physical disability, Plaintiff belongs to a class protected by the ADA.

137.    Defendants have subjected Plaintiff to discrimination, harassment, and retaliation in violation of the ADA. SFDPH has unjustifiably denied Plaintiff's repeated requests for reasonable disability accommodations without providing any alternative accommodations. Additionally, SFDPH has unjustifiably ignored Plaintiff's repeated complaints of discrimination and harassment by Ms. Long and other employees. On numerous occasions, Defendants also failed to engage in a timely, good-faith, interactive process to determine reasonable disability accommodations for Plaintiff. Additionally, after making a complaint to SFDPH, Plaintiff was denied a proper review process regarding her allegations of discrimination, harassment, and retaliation against her.

138.    Several employees of SFDPH, including employees holding management positions, including, without limitation, Supervisor Michelle Long, Supervisor Michelle Ruggels and Human Resources Manager, Louise Brooks-Houston. Defendant SFDPH, made the decisions that led to or actually engaged in the conduct which constituted discrimination, retaliation, and harassment against Plaintiff. Defendants knew or should have known of the discrimination, retaliation, and harassment.

Despite this, Defendants failed to take reasonable steps to prevent the discrimination, harassment, and retaliation against Plaintiff.

139.    Defendants failed to take immediate and appropriate corrective action with respect to the harassment of Plaintiff and failed to take all reasonable steps to prevent harassment of Plaintiff from occurring.

140.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

141.    As a direct result of Defendants' failure to prevent the discrimination, retaliation and harassment against Plaintiff based on her race and her disability, Plaintiff has suffered, and continues to suffer, increased emotional and mental distress, which partially manifests itself in physical discomfort, anxiety, extreme depression, loss of sleep, trouble eating, difficulty with concentration, debilitating headaches, crying episodes, emotional problems and physical pain. She has also suffered, and continues to suffer, from the following harms: the substantial loss of potential earnings; the damages to her reputation and career; the past and continuing loss of wages and employment benefits.

142.    Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

143.    Following Plaintiff's termination and as a proximate result of Defendant's conduct, as described herein, Plaintiff suffered humiliation, emotional distress, and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

144.    In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud, malice, and "in reckless indifference" of Plaintiff's rights and Plaintiff is, therefore, entitled to compensatory damages in an amount according to proof at the time of trial. See 42 U.S.C. § 1981a(b)(1).

145.    Plaintiff has also incurred and continues to incur attorney's fees and legal expenses in an amount according to proof at the time of trial.

### EIGHTH CAUSE OF ACTION

*Violation of Business and Professions Code §§ 17200*

*(Against Defendant City of San Jose and DOES 1 to 50)*

146.    Plaintiff re-alleges and incorporates by reference the allegations contained in all foregoing paragraphs as though fully set forth herein.

147.    Plaintiff brings this cause of action on behalf of himself and the general public who have been injured or damaged by defendants' violations of Business and Professions Code sections 17200, et seq.

148.    Defendants have committed the following unfair, unlawful, or fraudulent acts of unfair competition, in violation of Business and Professions Code sections 17200, et seq.:

(a) Unlawfully discriminating against plaintiff in violation of both the FEHA and ADA;
(b) Unlawfully failing to provide plaintiff with reasonable accommodations for his disability in violation of the FEHA;
(c) Unlawfully failing to engage in an interactive process to determine reasonable accommodations for plaintiff in violation of the FEHA;
(d) Unlawfully retaliating against plaintiff in violation of both the FEHA and ADA;
(e) Unlawfully harassing plaintiff in violation of both the FEHA and ADA; and
(f) Unlawfully failing to prevent discrimination, retaliation, and harassment against plaintiff in violation of both the FEHA and ADA.

149.    As a result of such conduct, Plaintiff has suffered and continues to suffer an injury-in-fact and monetary damages, including lost wages and employment benefits.

150.    Defendants' unlawful conduct is carried out as part of their business practice.

151.    Plaintiff is informed and believes and thereon alleges that Defendants have engaged in unfair business practices, which include, but are not limited to, discriminating against employees on the basis of such employee's race and/or disability.

152.    There may be other unfair, unlawful, or fraudulent business practices engaged in by defendants of which plaintiff is currently unaware. Plaintiff will seek leave to amend this Complaint when she ascertains such other and further unfair, unlawful, or fraudulent business practices. Plaintiff is a victim of these unfair business practices and has suffered an injury-in-fact and has lost money or property as the result of these unfair business practices.

### NINTH CAUSE OF ACTION

*Intentional Infliction of Emotional Distress*

*(Against All Defendants)*

153.    Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

154.    Defendant's treatment of Plaintiff as discussed supra, exceeds the bounds of decency, is intolerable within our civilized community, and is therefore outrageous.

155.    Defendant's actions, as discussed supra, were intended to cause Plaintiff to suffer the resulting emotional distress.

156.    Defendant succeeded in his attempt to cause Plaintiff to suffer extreme emotional distress as indicated by the lingering anxiety and shame, and that are the direct and proximate results of Defendant's conduct.

157.    With the hostile work environment becoming more difficult each day, Ms. Austin's anxiety became worse. Anxiety infiltrates her dreams, interrupting restful sleep and tightens her trapezius, chest and neck muscles and tendons. She awakens with more physical pain, greater perception of constant headaches and nausea in her stomach.

158.    Plaintiff was more vulnerable as she was still healing physically from the TBI and cervical injury. The combination of micro-scrutiny and hostile work environment, in its totality, has taken a tremendous emotional toll on Ms. Austin.

159.    Plaintiff was harmed.

160.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

161.    The conduct of Defendant as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendant and each of them, and their agents/employees or supervisors, authorized, condoned and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against Defendant.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

1.    Compensatory damages including emotional distress damages and lost wages, benefits and interest in a sum according to proof;

2.    Interest on judgment, including prejudgment interest, at the legal rate;

3.    Punitive damages in a sum according to proof;

4.    Attorney's fees and costs; and

5.    For any further legal and equitable relief, the Court deems proper.

Dated: November 4, 2020                    **RATNER MOLINEAUX, LLP**

/s/ David S. Ratner

_____
David S. Ratner
Shelley A. Molineaux
Attorneys for Plaintiff Francine Austin

COMPLAINT FOR DAMAGES